CINCINNATI INSURANCE COMPANY, Appellant,

v.

CONTROL SERVICE TECHNOLOGY, INC., Appellee.

[Cite as *Cincinnati Ins. Co. v. Control Serv. Technology, Inc.* (1996), 111 Ohio App.3d 801.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15607.

Decided June 21, 1996.

*David J. Balzano* and *Susan M. Silberbusch,* for appellant.

*Christopher W. Carrigg,* for appellee.

BROGAN, Presiding Judge.

In this case, Cincinnati Insurance Company appeals from a summary judgment granted to Control Service Technology, Inc. ("CST") on the issue of CST's liability under a lease agreement entered into by CST and Cassady Woodworks. While no facts were officially stipulated below and no affidavits or depositions were submitted, the following facts appear to be undisputed: On August 9, 1990, CST signed a written offer to lease a one-story building at 442 Todd Street in Dayton, Ohio. The offer was entitled "agreement to lease" and was accepted by the lessor, Cassady Woodworks, on August 10, 1990. The agreement set forth a number of terms and provided that these terms were to be incorporated into a lease to be delivered to the lessee at least five days before August 22, 1990. However, no lease was apparently ever prepared or delivered.[1]

The lease agreement provided for two renewal options, thus allowing the lease to run until August 31, 1993. During the final renewal term, a fire occurred at the leased premises on November 4, 1992. As a result of the fire, Cincinnati Insurance Company, which insured Cassady Woodworks, paid $24,846.15 on behalf of its insured. Cincinnati Insurance then filed this action, claiming that CST and/or its employees had negligently caused the fire.

CST filed a motion for summary judgment on May 8, 1995, attaching only a copy of the agreement to lease. In its motion, CST claimed provision j. of the lease waived liability by the lessor for negligence on the part of the lessee and that, consequently, Cincinnati Insurance, as subrogee of the lessor, could not

---

1. The record is silent on this, as well as many other points, as no factual materials were submitted to the trial court other than an unauthenticated copy of the agreement to lease.

maintain an action for negligence against CST. In replying to the motion, Cincinnati Insurance also did not attach any materials, other than a copy of the agreement to lease, but, instead, merely disputed that the provision in question waived liability for negligence. The trial court agreed with CST, finding in its decision of October 27, 1995, that the lessor's agreement to restore the property was a waiver of any negligence on the part of CST.

After the trial court's decision, Cincinnati Insurance filed a motion for relief from judgment, attaching an affidavit from the president of Cassady Woodworks, who indicated the building was rendered untenantable by the fire and was vacated. This motion for relief from judgment was not ruled on prior to the appeal and is not before us.

On appeal, Cincinnati Insurance raises these two assignments of error: (1) the trial court erred by applying facts not in evidence, and (2) the trial court erred in finding that the lease agreement placed liability for repairs on the lessor regardless of which party caused the damage. We will consider these issues in reverse order, since our ruling on the second issue is dispositive of this appeal.

## I

Because Cincinnati Insurance brings this action against CST as a subrogee of its insured, Cassady Woodworks, Cincinnati Insurance can claim no rights higher than those of Cassady Woodwork. *Indiana Ins. Co. v. Carnegie Constr., Inc.* (1995), 104 Ohio App.3d 219, 227, 661 N.E.2d 776, 782, discretionary appeal not allowed in (1995), 74 Ohio St.3d 1444, 656 N.E.2d 344 (*Carnegie* ). Therefore, if Cassady Woodworks contractually waived claims for CST's negligence, Cincinnati Insurance would likewise have no claim. In finding that a waiver occurred, the trial court relied on two Ohio cases dealing with exculpatory provisions in lease agreements: *United States Fire Ins. Co. v. Phil–Mar Corp.* (1956), 166 Ohio St. 85, 1 O.O.2d 212, 139 N.E.2d 330 (*Phil–Mar* ), and *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 587 N.E.2d 391 (*Consolidated* ). Cincinnati Insurance claims these cases are not controlling because they involved lease provisions dissimilar to those involved in this case. We agree.

In *Phil–Mar*, the Ohio Supreme Court considered the effect of the following surrender clause:

" '[L]essee will deliver up and surrender to the lessor possession of the premises hereby leased upon the expiration of this lease or its termination in any way, in as good condition and repair as the same shall be at the commencement of said term (loss by fire and ordinary wear and decay only excepted).' " (Emphasis deleted.) *Id.,* 166 Ohio St. at 86–87, 1 O.O.2d at 213, 139 N.E.2d at 331–332.

In ruling on whether this surrender clause waived liability of the lessee for fire damage due to the lessee's negligence, the court first observed that "in the construction of any written instrument the primary duty of the court is to determine and give effect to the intention of the parties." *Id.* at 87, 1 O.O.2d at 213, 139 N.E.2d at 332. After reviewing the lease, the court found that the parties intended to relieve the lessee from its common-law liability for negligence because they had qualified the exception for wear and tear with the words "ordinary," but had placed no similar qualification on the exception for fire. Specifically, the court stated, "The lease does not say loss by ordinary fire or non-negligent fire, but merely loss by fire, with no qualification or limitation. The parties, had they so desired, could easily have qualified such provision as they did with 'wear and decay.' " *Id.* at 88, 1 O.O.2d at 214, 139 N.E.2d at 332. The court also relied on another provision in the lease requiring the lessee to pay the lessor for increased fire insurance premiums attributable to the lessee's occupancy of the premises. *Id.* at 88, 1 O.O.2d at 214, 139 N.E.2d at 333.

Likewise, in *Consolidated,* the surrender clause obligated the lessee to deliver the premises in the same condition as when the lease began, but excepted ordinary wear and tear and damage due to fire. See, 68 Ohio App.3d at 23–24, 587 N.E.2d at 394.

In contrast to these rather explicit clauses, the lease herein did not contain a surrender clause excepting damage by fire from the lessee's obligations. Instead, the lease contained these pertinent provisions:

"b) Lessee will hold lessor harmless from all liability from all damage actions due to lessee's possession. Lessee will provide public liability insurance for the use and benefit of lessor with limits of 200T/500T/50. Lessee will pay all charges for all utilities consumed by lessee; Lessor will pay all taxes and assessments on the real estate.

"c) Lessee may erect temporary partitions, bins, equipment, and shelving which shall remain the property of lessee and be removed from the premises by Lessee at the expiration of the lease, but in case of injury or defacement to the premises by removal by same, the lessee shall repair and place the building in the same condition as originally leased, normal wear and tear excepted.

" * * * *

"f. Lessor will deliver the premises in broom-clean condition. Lessor to make and pay for all exterior repairs /Roof & Structural; lessee to make and pay for all interior repairs and maintenance, including broken windows.

" * * * *

"j. If the premises are damaged or destroyed by a fire or other casualty which renders them wholly or substantially untenantable, and if (i) the casualty

occurs in the last 3 months of the term, or (ii) the damage cannot, with reasonable diligence, be substantially repaired and restored within 90 days after the casualty, then lessor or lessee may terminate the lease effective the date of the casualty. If neither party terminates the lease within 30 days of the casualty, or if the damage does not render the premises wholly or substantially untenantable, lessor shall restore the premises to substantially their condition prior to the casualty, not to exceed 90 days. Lessor shall not be responsible for loss or damage to lessee's trade fixtures and personalty."

■ In contract law, the general rule is that in the absence of ambiguity, interpretation need not be submitted to the trier of fact and the court is permitted to interpret the contract as a matter of law. *Carnegie,* 104 Ohio App.3d at 222–223, 661 N.E.2d at 779. However, we find the contract ambiguous, and its ambiguity is exacerbated by the parties' failure to furnish an adequate factual basis as an aid to interpretation.

■ In this context, we note first that the above provisions are susceptible of more than one meaning. For example, while the lessor does have the obligation to repair the premises in the event of less than substantial destruction, the lessor does not have the same obligation if the premises are wholly or substantially destroyed, repairs cannot be made within ninety days, and either the lessor or lessee decides to terminate. Consequently, this provision does not appear to be a waiver of negligence on the part of the lessee, or at least it is not the type of waiver ordinarily relied upon to excuse a party from the results of the party's own negligence. See, *e.g., Kay v. Pennsylvania RR. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417, 103 N.E.2d 751, paragraph one and two of the syllabus (intention to relieve party from product of own negligence must be expressed clearly and unequivocally, and contracts embodying such agreements will be strictly construed). In fact, a very similar provision was rejected in *Acquisto v. Joe R. Hahn Enterprises, Inc.* (1980), 95 N.M. 193, 619 P.2d 1237, overruled on other grounds, *C.R. Anthony Co. v. Loretto Mall Partners* (1991), 112 N.M. 504, 817 P.2d 238, 242 (*Acquisto* ). In *Acquisto,* the court noted that a clause requiring a landlord to rebuild is routinely found in leases "without regard to which party is responsible for providing insurance." *Id.* at 196, 619 P.2d at 1240 (rejecting claim that clause should be interpreted as mandating that landlord supply insurance on premises and that tenant was responsible for negligence). See, also, *Wichita City Lines v. Puckett* (1956), 156 Tex. 456, 464, 295 S.W.2d 894, 899 (provision giving lessor option not to repair but to rebuild is inconsistent with intention of protecting lessee's interests).

Also weighing against exculpation of the lessee for its own negligence in this case is that the lessee is responsible in provision f. for all interior repairs and in

provision c. for restoring the leased premises to their original condition (absent normal wear and tear) if the lessee erects temporary structures, such as partitions or shelving. While this latter provision is not a standard surrender clause like the ones appearing in the *Phil–Mar* and *Consolidated* cases, it does, however, reveal intent that the lessee will be responsible for restoring the premises to their original condition at the end of the lease. Moreover, unlike the surrender clauses in *Phil–Mar* and *Consolidated,* this clause does not contain an exception for fire damage, but provides an exception only for normal wear and tear.

On the other hand, provision b. of the lease requires the lessee to hold the lessor harmless for all liability for all damage actions due to the lessee's possession and further specifies that the lessee obtain "public liability insurance." Given that public liability insurance and casualty insurance are different types of insurance, the fact that the lessor required one type of insurance but not the other may show an intent not to hold the lessee responsible for damages other than those caused to third parties. See *Damon's Missouri, Inc. v. Davis* (1992), 63 Ohio St.3d 605, 613, 590 N.E.2d 254, 260, fn. 1 (noting that lessee was required to purchase both public liability and casualty insurance for leased premises, the latter of which should have covered fire damage on the structure, but did not, due to an insurance agent's misinterpretation of the lease agreement as requiring fire insurance only on improvements to the premises). As was observed by the court in *Consolidated, supra,* "[t]he total absence of a provision from a written contract is evidence of an intention of the parties to exclude it rather than of an intention to include it." 68 Ohio App.3d at 25, 587 N.E.2d at 395. Thus, since the parties expressly included an obligation for the lessee to purchase public liability insurance, but did not include a similar provision for casualty insurance, one could conclude that the parties did not intend for CST to be responsible for fire damage.

However, again, some ambiguity exists in this regard, as the fact is that liability insurance and casualty insurance are distinct types of insurance, insuring different types of risks. As was pointed out in *Dix Mut. Ins. Co. v. LaFramboise* (1992), 149 Ill.2d 314, 325–327, 173 Ill.Dec. 648, 654, 597 N.E.2d 622, 628, fire or casualty insurance insures property against fire regardless of cause, while liability insurance protects against an insured's own negligent conduct. Thus, the fact that the lease required CST to obtain only liability insurance may not evidence an intent to exempt CST from its own negligent conduct, but may, in fact, illustrate a reverse intention. Unfortunately, the parties have not provided us with copies of the insurance policies procured by either side, nor have we been given evidence about any discussions the parties may have had about insurance.

Consequently, we have no information on which to make a judgment about this matter. Our role is not to resolve ambiguities that should be addressed in the trial court.

Finally, unlike the leases in *Phil–Mar* and *Consolidated,* the present lease did not require that the lessor carry fire insurance, nor did it specify that the lessor would be reimbursed for additional fire insurance premiums attributable to the lessee's occupancy. See *Phil–Mar,* 166 Ohio St. at 88, 1 O.O.2d at 214, 139 N.E.2d at 332–333, and *Consolidated,* 68 Ohio App.3d at 24, 587 N.E.2d at 394.

Because the Ohio authorities relied upon below are not particularly helpful in the context of the provisions at issue in this case, we looked to the law in other jurisdictions. In this context, a conflict currently exists among the states concerning the effect of exculpatory language in a lease agreement and the status of a tenant as a co-insured on a landlord's policy. Cf. *Alaska Ins. Co. v. RCA Alaska Communications, Inc.* (Alaska 1981), 623 P.2d 1216 (holding that it is against public policy for risk of loss to be shifted from landlord's insurer to tenant); *Neubauer v. Hostetter* (Iowa 1992), 485 N.W.2d 87 (rejecting theory that tenant is co-insured on landlord's insurance policy); *United Fire & Cas. Co. v. Bruggeman* (Minn.App.1993), 505 N.W.2d 87 (finding tenant co-insured in oral lease situation); *Acquisto,* 95 N.M. 193, 619 P.2d 1237 (intent to relieve lessee or tenant from liability must be determined from consideration of the lease as a whole, surrounding circumstances, and natural meaning of language used); *Bannock Bldg. v. Sahlberg* (1994), 126 Idaho 545, 548–549, 887 P.2d 1052, 1055 (following approach of looking at lease and surrounding circumstances); and *Hood v. Welch* (1971), 249 Ark. 1159, 463 S.W.2d 362 (requiring lease to explicitly state intent to waive tenant's liability).

The Ohio Supreme Court has not yet ruled on the issue of whether a lessee is to be considered an implied co-insured, and we decline to do so on the basis of the current inadequate factual record.[2] In this regard, we note that the cases we reviewed, including the Ohio cases, presented far more complete factual records than we have before us. See, *e.g., Carnegie,* 104 Ohio App.3d at 223–225, 661 N.E.2d at 780 (trial held on declaratory judgment issues); and *Phil–Mar,* 166 Ohio St. at 88, 1 O.O.2d at 214, 139 N.E.2d at 331 (directed verdict granted in trial court at close of all evidence). Such evidence would obviously be especially

---

**2.** We note parenthetically that a reading of *Phil–Mar* indicates Ohio would likely neither follow the broad rule of including a tenant as a co-insured nor restrict waiver only to express language. Instead, *Phil–Mar* seems to suggest the intermediate approach of considering the contract terms, the surrounding circumstances, and the natural language used in the contract, particularly where, as here, the contract is ambiguous.

crucial in a case like the present, where the contract is ambiguous and requires clarification. Consequently, this matter must be remanded for resolution by the trier of fact in accordance with this opinion. On remand, the trier of fact should consider the effect of the provisions in the contract, the surrounding circumstances, and the language used by the parties. See footnote 2 above. While the issues may be susceptible of disposition by summary judgment (assuming a lack of disputed, material facts), we are simply unable to reach that conclusion on the basis of the current record.

Accordingly the second assignment of error of Cincinnati Insurance is sustained.

## II

In view of our resolution of the second assignment of error, we will not consider the first assignment of error. Because the trier of fact will necessarily consider the evidence on remand, any contention that the court erroneously considered facts outside the record in granting summary judgment is moot.

Based on the preceding discussion, appellant's second assignment of error is SUSTAINED and the first assignment of error is moot. The summary judgment awarded to CST is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN and GRADY, JJ., concur and concur separately.

FAIN, Judge, concurring.

I concur fully in the opinion of this court, which I consider to be well reasoned. I write separately only to identify a crucial step in my reasoning process, not inconsistent with anything expressed in the opinion of the court, that leads me to conclude that paragraph j. of the lease between the parties need not be construed as a waiver or limitation of the lessee's liability for fire damage to the premises occasioned by its negligence.

Because a contractual provision relieving a party of liability for its own negligence is in derogation of common law, a paragraph in a contract should not lightly be construed to so provide. Ambiguity should be resolved against the party seeking to be relieved from the consequences of its negligent conduct. If

the provision in the contract can be reasonably construed otherwise, no waiver should be found.

In my view, paragraph j has an apparent purpose that can be given full force and effect without construing it as a waiver of the lessee's liability for its own negligence. That purpose is to provide for the continuation of the lease if fire damage is not so extensive that it would be commercially impractical to continue the lease. In other words, even though the fire damage to the premises is the result of the lessee's negligence, to which the lessee will have to respond in damages, it may be important to the lessee to be able to force the lessor to restore the premises, so that the lease can continue, rather than simply to pocket the damages paid by the lessee and walk away from the lease, allowing it to terminate in view of the unsuitability of the premises. Market conditions may have resulted in the leased space having a value substantially in excess of the rent payable under the lease. The location may have great commercial value to the tenant, again making the space worth substantially more than the rent payable. Paragraph j permits the tenant to require the landlord to restore the premises, something the landlord would not otherwise be required to do, and this may be of value to the tenant independently of the tenant's obligation, or lack of obligation, to respond in damages for a fire caused by the tenant's negligence.

In this case, unlike in *United States Fire Ins. Co. v. Phil–Mar Corp.* (1956), 166 Ohio St. 85, 1 O.O.2d 212, 139 N.E.2d 330, upon which the lessee principally relies, the apparent purpose of the lease provision relied upon by the lessee is not necessarily inconsistent with liability by the lessee for fire damage to the premises caused by its own negligence. Therefore, the reasoning expressed in *Phil–Mar* does not apply, and the provision in the case before us need not be construed as being irreconcilable with the lessee's liability for its negligence.

GRADY, J., concurs in the foregoing concurring opinion.