OPINION
{¶ 1} In this case, Travelers Insurance Company (Travelers) appeals from a summary judgment granted to Annette Jo Dailey concerning insurance coverage. As a single assignment of error, Travelers claims that the trial court erred in ruling that Dailey was entitled to underinsured motorists (UIM) coverage under a commercial auto policy issued by Travelers. After considering the assignment of error, we find it without merit and will affirm the trial court judgment.
 {¶ 2} This case is another in a long line of decisions based onScott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292. According to the facts (which are apparently undisputed), Dailey was involved in an auto accident on St. Rt. 49 in Darke County, Ohio, on October 15, 1999. At the time, Dailey was driving her own automobile. As Dailey traveled south on Rt. 49, a load of wooden pallets fell from a truck being driven northbound. Another vehicle traveling north then struck the pallets and propelled debris into the southbound lane. Dailey's vehicle struck the debris, and Dailey was injured as a result.
 {¶ 3} Subsequently, Dailey filed the present action against these parties: 1) the truck driver (Timothy Kaufmann); 2) Kaufmann's insurer, State Farm Mutual Automobile Insurance Company; 3) the driver of the second vehicle (Carmen Sterner-Watkins); 4) Sterner-Watkins' Insurer, Indiana Insurance Company; and 5) Travelers, which insured Dailey's employer (Wayne Hospital Company). Dailey also included UIM claims against her own insurer (State Farm).
 {¶ 4} Dailey's claims against all parties, except those against Travelers, John Doe defendants, and "ABC" (unknown) insurers, were dismissed both prior to and shortly after Dailey's motion for summary judgment was granted. The amount of Dailey's damages also was not yet litigated. However, since Travelers wanted to appeal coverage issues, the trial court filed a nunc pro tunc judgment entry on August 23, 2002, finding no just reason for delay.
 I {¶ 5} Before we discuss Travelers' assignment of error, a few preliminary comments are in order. Earlier, we mentioned that the facts in this case were apparently undisputed. We said this because no factual stipulations and affidavits were filed in the trial court. However, neither side has challenged any facts recited by the other, nor has either party claimed error about the authenticity or sufficiency of the evidence.
 {¶ 6} Since parties may move for summary judgment under Civ.R. 56(A), "with or without supporting affidavits," affidavits are not strictly necessary. In fact, trial courts do not even err if they consider unverified documents, so long as the opposing party fails to object. Brown v. Ohio Cas. Ins. Co. (1978), 63 Ohio App.2d 87, 90-91. This does not mean, however, that submitting unverified items is a preferred approach, nor does it mean that parties should fail to file stipulations of fact, even where the facts are not contested. Conscientious representation includes attention to detail, including the proper verification required by Civ.R. 56(E). State ex rel. Corrigan v.Seminatore (1981), 66 Ohio St.2d 459, paragraph three of the syllabus. Court decisions should not be based on unverified statements of attorneys.
 {¶ 7} We mention these points not to elevate form over substance, but because we often see cases where parties fail to submit proper evidentiary materials in the trial court or neglect to properly identify or authenticate exhibits. See, e.g., Green v. Lemarr
(2000),139 Ohio App.3d 414, 423 (noting various procedural defects, including evidentiary problems, in summary judgment proceeding); Estate of Fox v. Auto OwnersIns. Co. (June 12, 1998), Darke App. No. 1456, 1998 WL 309212, *10 (parties failed to provide pertinent insurance policy provisions); Ruhev. Hemmelgarn (Aug. 22, 1997), Darke App. No. 96-CA-1423, 1997 WL 476687, *2 (review hampered by inadequate record); Matter of Ganoe (Aug. 1, 1997), Greene App. No. 96CA120, 1997 WL 435699, *2 (case remanded due to inadequate record); and Cincinnati Ins. Co. v. Control Serv.Technology, Inc. (1996), 111 Ohio App.3d 801, 807, n. 1 (noting problems with review due to counsels' failure to submit any factual materials other than one unauthenticated lease agreement).
 {¶ 8} As the above cases indicate, an incomplete record inhibits review and causes remand for needed information. For example, the original issue date of a policy (not the most recent issue date) is often important for resolving coverage issues. Wolfe v. Wolfe, 88 Ohio St.3d 246,250, 2000-Ohio-322. The unverified declarations sheet in this case indicates that the issue date for the insurance policy was May 19, 1999. However, we cannot tell from the record if this was the original issue date, or if Travelers had issued a previous policy to Wayne Hospital.
 {¶ 9} Fortunately, we have decided that differences in versions of R.C. 3937.18 would not potentially impact this case. The provision at issue is an "other owned vehicle" exclusion, which eliminates UIM coverage in certain cases, including situations where an insured owns a vehicle involved in an accident. This type of exclusion was invalidated in Martin v. Midwestern Group. Ins. Co. (1994), 70 Ohio St.3d 478. However, effective September 13, 1997, R.C. 3937.18 was amended by H.B. 261, which superseded the holding in Martin, and once again validated "other owned vehicle" exclusions. See Baughman v. State Farm,88 Ohio St.3d 480, 484, 2000-Ohio-397.
 {¶ 10} Depending on when the policy in this case was originally issued, pre-H.B. 261 law could have applied and could have invalidated the exclusion. However, since the exclusion does not preclude coverage in any event, we need not resolve this point. By the same token, we strongly encourage litigants to fully develop the record in the trial court, because a policy's original issue date can often affect the outcome. If the issue date had potentially impacted the present case, remand would have been required. Remand would have been a waste of time and could have been avoided by appropriate stipulations.
 {¶ 11} As a final point in this context, we note that the insurance policy in this case was not properly authenticated under Civ.R. 56(E). Again, since no one objected, the trial court did not err in considering the policy. However, the procedure is not one we would recommend.
 {¶ 12} Turning now to the assignment of error, Travelers contends that the trial court erred in finding that Dailey was entitled to UIM coverage under the Wayne Hospital commercial auto policy. In this regard, Travelers concedes that Dailey might be considered an "insured" under Scott-Pontzer. However, Travelers claims that coverage for Daily's injuries is precluded by the "other owned vehicle" exclusion contained in the UIM endorsement.
 {¶ 13} The UIM endorsement (CA 21 33 12 97) defines an insured as:
 {¶ 14} "1. You.
 {¶ 15} "2. If you are an individual, any `family member.'
 {¶ 16} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 17} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
 {¶ 18} In the Business Auto Coverage Form, Travelers states that "[t]hroughout this policy, the words `you' and `your' refer to the Named Insured shown in the Declarations." CA 00 01 12 93, p. 1 of 11. The insureds named in the Declarations are corporate entities, i.e., Wayne Hospital Company and Wayne Hospital Auxiliary. In Scott-Pontzer, the Ohio Supreme Court found identical policy language ambiguous because a corporate entity could not, itself, occupy or operate an automobile, nor could it suffer bodily injury or death. 85 Ohio St.3d at 664. Accordingly, the court held that the word "you" should be interpreted to include company employees. Id. at 664-65. The result was that a company employee was an insured for purposes of UIM coverage. Id. at 665. The same result follows here, and Dailey was an "insured" under Travelers' policy.
 {¶ 19} Scott-Pontzer did not address exclusions from UIM coverage. Subsequently, we considered that issue in Uzhca v. Denham, Montgomery App. No. 19106, 2002-Ohio-1814, discretionary appeal allowed,96 Ohio St.3d 1511, 2002-Ohio-4950. In Uzhca, Great Northern insured Bravo Restaurant under a business auto policy. The husband of a Bravo employee was killed in an auto accident while driving his own car.2002-Ohio-1814, ¶¶ 2-3. Because Great Northern's definition of insured was identical to the definition in Scott-Pontzer, we found that the husband was an insured under the business auto policy, for purposes of UIM coverage. Id. at ¶ 19.
 {¶ 20} However, the Great Northern policy also excluded UIM coverage, among other things, where any family member occupied an auto owned by the family member that was not a "covered auto." Id. at ¶ 23. A covered auto was defined as "[o]nly those autos you own." Id. at ¶ 26. We decided that the word "you" must be interpreted consistently throughout the policy and would include employees of the corporate insured wherever it appeared in the policy. Id. at ¶ 29. Thus, while the employee's auto would be covered (as an auto "you" own), an auto owned by a family member would not. Therefore, UIM coverage for the husband was excluded.
 {¶ 21} The policy language in the present case is quite similar to the language in Great Northern's policy. In this regard, Section C of the UIM portion of Travelers' policy says that:
 {¶ 22} "This insurance does not apply to:
 {¶ 23} "* * *
 {¶ 24} "`Bodily injury' sustained by:
 {¶ 25} "a. You while `occupying' or when struck by any vehicle owned by you that is not a covered `auto' for Uninsured Motorists Coverage under this coverage form;
 {¶ 26} "b. Any `family member' while `occupying' or when struck by any vehicle that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form; or
 {¶ 27} "c. Any `family member' while `occupying' or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy." CA 21 33 12 97, pp. 1-2 of 4.
 {¶ 28} Unlike Uzhca, the present case involves a car owned and driven by an employee, not a family member. Consequently, subsection a. would apply, rather than subsection b (which was involved in Uzhca). The issue then becomes whether the auto owned by the employee (Dailey) was a "covered auto."
 {¶ 29} Item Two of the Declarations in the Travelers' policy shows the coverage and limits of insurance for the policy. Various categories are listed, such as liability, personal injury, UIM, etc. Each category has a "covered auto symbol." For UIM coverage, the covered auto symbol is a "2" and the limits of liability are $1,000,000. See CA T0 01 01 87. According to Section I of the Business Auto Coverage Form,
 {¶ 30} "ITEM TWO of the Declarations shows the `autos' that are covered `autos' for each of your coverages. The following numerical symbols describe the `autos' that may be covered `autos.' The symbols entered next to a coverage on the Declarations designate the only `autos' that are covered autos.
 {¶ 31} "1 = any `AUTO.'
 {¶ 32} "2 = OWNED `AUTOS' ONLY. Only those `autos' you own (and for Liability Coverage any `trailers' you don't own while attached to power units you own). This includes those private passenger `autos' you acquire ownership of after the policy begins." CA 00 01 12 93, p. 1 of 11.
 {¶ 33} Again, applying the definition of "you" consistently, and based on the ambiguity found in Scott-Pontzer, the auto owned and driven by Dailey at the time of the accident would be a "covered auto" under the policy.
 {¶ 34} In contending that coverage should be excluded, Travelers focuses on the fact that corporations can and do own autos. As a result, Travelers believes Scott-Pontzer's rationale for broadening the meaning of the word "you" does not apply. Travelers acknowledges that we rejected this argument in Uzhca, but claims that we did so without explanation or comment. We disagree.
 {¶ 35} In Uzhca, the insurer advanced the same argument that Travelers is now making. See, 2002-Ohio-1814, ¶ 27. In contrast, the employee argued in Uzhca that the word "you" was ambiguous throughout the policy and always included a corporation and its employees. Id. at 26. We found the employee's argument persuasive (thereby rejecting the insurer's claim). Specifically, we said that "[w]e believe that a consistent interpretation of the word is preferable to ascribing it different meanings depending on where in the policy it appears." Id. at ¶ 28. We still agree with that statement.
 {¶ 36} Furthermore, accepting Travelers' position would render the exclusion provision meaningless, or at best hopelessly confusing. For example, the policy provides UIM coverage for all sums an insured is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by an insured. An "insured" is defined as "you" (the named insured), and if "you" are an individual, any family member. As was pointed out inScott-Pontzer, UIM coverage is illusory if the sole named insured is a corporation, since corporations cannot sustain bodily injury.85 Ohio St.3d at 664.
 {¶ 37} The Travelers policy excludes UIM coverage for "bodily injury sustained by a. [y]ou while `occupying' or when struck by any vehicle owned by you that is not a covered `auto' for Uninsured Motorists Coverage under this coverage form." If we interpret "you" as suggested by Travelers, i.e., to mean only the named insured, the exclusion provision makes no sense. Specifically, the provision would exclude coverage for bodily injury to Wayne Hospital Company, while occupying or when struck by any vehicle owned by Wayne Hospital Company that is not a covered auto. Even if a corporation can own autos, it cannot occupy an auto, nor can it sustain bodily injury. Accordingly, we think the approach outlined in Uzhca is still appropriate. We note that the Seventh District Court of Appeals found that a similar "other owned vehicle" provision did not exclude UIM coverage for an employee who was injured while driving his own auto. See Headley v. Orange Guardian Ins. Co., Mahoning App. No. 01-CA-130, 2003 Ohio-8, ¶¶ 28-42.
 {¶ 38} As an additional argument, Travelers claims that consistent interpretation of the word "you" throughout the policy requires Dailey to be held responsible for paying excess premiums. The part of the policy Travelers refers to is found in the "Calculation of Premium — Composite Rates," and says that:
 {¶ 39} "[t]he advance premium stated above is an estimated premium for the Declarations Period. Upon termination of this period, the earned premium shall be computed in accordance with the policy and the endorsement. If the earned premium thus computed exceeds the estimated advance premium paid, you shall pay the excess to us; if less, we shall return to you the unearned paid portion." IL T3 02 07 86, p. 1.
 {¶ 40} Traveler's argument, while superficially logical, is contradicted by explicit policy terms. Under Section E of "Common Policy Conditions," the policy specifically says that "[t]he first Named Insured shown in the Declarations: a. is responsible for the payment of all premiums; and b. [w]ill be the payee for any return premiums we pay." IL T0 01 12 94 (Rev. 2-95), p. 1 of 2. Thus, under the policy, even the second named insured (Wayne Auxiliary), is not responsible for excess premiums. Instead, the responsibility is solely delegated to Wayne Hospital Company, which is the first named insured.
 {¶ 41} Travelers also suggests that we should revisit the validity of the "other owned vehicle" exclusion in light of a decision by the Sixth District Court of Appeals that found the exclusion effective to bar coverage. See Geren v. Westfield, Lucas App. No. L-01-1398,2002-Ohio-1230, appeal accepted for review, 96 Ohio St.3d 1449,2002-Ohio-3624. However, after reviewing Geren, we see no reason to revisit the issue.
 {¶ 42} Geren was an employee of Meyer Equipment and was injured when his motorcycle was struck by an auto. At the time, Meyer was insured by Westfield Insurance Company. Geren's father was employed by Chase, and Chase, in turn, was insured by Travelers under a commercial auto policy.2002-Ohio-1230, ¶ 3. After the trial court granted summary judgment in favor of both insurers, Geren appealed.
 {¶ 43} The Sixth District Court of Appeals first affirmed the judgment in Westfield's favor, because Meyer Equipment was a partnership, not a corporation. As a result, the court did not thinkScott-Pontzer applied. Id. at ¶¶ 12-28. The court then considered the claim against Travelers. First, the court found that Geren was an insured under the Travelers' policy, pursuant to Scott-Pontzer. Id. at ¶ 40. Nonetheless, the court decided coverage was excluded by the "other owned vehicle" clause because Geren was riding his own motorcycle at the time of the accident. Id. The provision in question was subpart b., which excluded coverage for bodily injury sustained by "[a]ny `family member' while `occupying' or when struck by any vehicle owned by that `family member' that is not a `covered auto' for Uninsured Motorists Coverage under this Coverage Form." Id. at ¶¶ 37-39.
 {¶ 44} This is precisely the type of factual and coverage situation that was involved in Uzhca. Specifically, we considered an "other owned vehicle" clause, and found that an automobile owned by a family member fell within subpart b. As a result, we held that UIM coverage was excluded for the injured family member. Uzhca,2002-Ohio-1814, ¶ 29.
 {¶ 45} Travelers also relies on Addie v. Linville, Cuyahoga App. Nos. 80547 and 80916, 2002-Ohio-5333. Although Addie did not involve a Travelers' policy, the policy contained the same pertinent UIM exclusions and the fact situation was the same, i.e., a family member of an employee claimed coverage for a vehicle owned by the family member. Id at ¶¶ 20-24. Like Geren and Uzhca, Addie held that the policy successfully excluded coverage for family members who were driving their own autos at the time of an accident with an underinsured motorist. Id. at ¶ 52. In fact, Addie cited Uzhca as being in accord with its decision. See, id. at ¶ 54.
 {¶ 46} As a final matter, Travelers cites the Third District Court of Appeals' decision in Brooks All American Ins. Co., Shelby App. No. 17-02-25, 2002-Ohio-6617, as a recent example of an "other owned vehicle" exclusion that has been held unambiguous. Travelers concedes that Brooks
involves a different subsection of the exclusion, but believes thatBrooks typifies a growing number of appellate districts upholding the validity of the exclusion clause. From this, Travelers claims that a conflict exists among appellate districts.
 {¶ 47} Again, we disagree, as we see no conflict. In Brooks, a wife was injured while riding in a car owned and driven by her husband. The husband was an employee of All American's named insured, and the parties agreed that both husband and wife were "insureds" underScott-Pontzer. Id. at ¶ 10. However, subsection c. of the "other owned vehicle" exclusion eliminated UIM coverage for any family member who sustained bodily injury "while `occupying' or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage form or policy." Id. at ¶¶ 16-19.
 {¶ 48} Because the employee's auto was covered on a primary basis by another insurer (Safeco), the Third District Court of Appeals found that the employee's wife, as a family member, was not entitled to coverage under the unambiguous terms of the exclusion clause. Id. at ¶ 20. We agree with that finding. Furthermore, while the Third District did not discuss how it interpreted the word "you," the court must have interpreted it as we did in Uzhca, i.e., to mean both the named insured and its employees. Otherwise, the exclusion clause would not have applied, since the wife did not occupy, nor was she struck by "any vehicle owned by" the named insured ("you") at the time of the accident. Instead, the wife occupied a vehicle owned by an employee of the named insured.
 {¶ 49} Our own research has uncovered a recent case in which a motorcycle owned by an employee was not considered a "covered auto" for purposes of UIM coverage. See Weyda v. Pacific Employer's Ins. Co., Hamilton App. No. C-020410, 2003-Ohio-443. In Weyda, the policy provided for "a schedule of autos you own" and "indicated that a schedule was on file with `Company.'" Id. at ¶ 11. According to an affidavit filed by the insurer, the employer (Best Buy), was also required "as part of negotiations for the issuance and renewal of the policy and under policy terms, to maintain and to provide a listing of covered autos." Id. at ¶ 16.
 {¶ 50} Consequently, since the employee's motorcycle was not specifically listed as one of the covered autos, the First District Court of Appeals found that UIM coverage was prohibited by the "other owned vehicle" exclusion. This exclusion, like the one in the present case, indicated that coverage did not apply for bodily injury sustained by "you" while "occupying or struck by any vehicle owned by you that is not a covered `auto' for Uninsured Motorists Coverage under this Coverage Form." Id. at ¶ 9.
 {¶ 51} As a preliminary point, we note that Weyda and Uzhca are consistent, because the First District included employees within the meaning of "you" when it interpreted the exclusion clause. Id. at ¶¶ 13-15. This is a logical approach. As we stressed earlier, if employees are not included within the term "you," the exclusion clause would not even apply, since it excludes bodily injury "you" sustain while occupying an auto "you" own. Again, a corporation cannot sustain bodily injury. It would also be illogical to find that "you" means the named insured and employee when deciding who is insured for UIM coverage, and then limit "you" to just the named insured when deciding who is excluded from coverage.
 {¶ 52} As an additional matter, Weyda is distinguishable because Travelers' policy did not require Wayne Hospital to provide a schedule of owned autos. We also note that the record does not contain any type of affidavit from Travelers indicating that Wayne was required to provide and maintain such a schedule as part of negotiations for issuance and renewal of the policy. In fact, as we mentioned earlier, no affidavits were filed in the trial court. If such evidence existed and was pertinent, it should have been brought to the trial court's attention.
 {¶ 53} Niese v. Maag, Putnam App. No 12-02-06, 2002-Ohio-6986, also denied coverage for an employee's motorcycle based on the "other owned vehicle" exclusion. In Niese, the policy defined "covered auto" for UIM coverage as "only those autos listed in the declaration and for which a premium was paid." Id. at ¶ 6. Since the listed autos included a semi-trailer and five Chevrolet Luminas, but not the employee's motorcycle, the Third District Court of Appeals decided that the motorcycle was not a covered auto. Id. at ¶¶ 6 and 13. Like Uzhca,Niese applied a consistent definition of "you" throughout the policy, to include employees of the named insured. Id. at ¶ 12.
 {¶ 54} Based on the above discussion, we see no inconsistency in how Ohio courts have interpreted the "other owned vehicle" exclusion clause. Accordingly, we see no reason to reconsider our decision inUzhca. We also see no reason to hold this case pending resolution of theUzhca and Geren appeals, as Travelers has asked us to do. Although the Ohio Supreme Court consolidated appeals in Uzhca and Geren, the appeals were discretionary, and no conflict has been certified. See Geren,96 Ohio St.3d 1449, 2002-Ohio-3624 (allowing appeal), and Uzhca,96 Ohio St.3d 1511, 2002-Ohio-4950 (allowing discretionary appeal and consolidating case with the pending appeal in Geren). Moreover, we do not find that the decisions conflict, for the reasons outlined above.
 {¶ 55} The preceding discussion indicates that the trial court did not err in finding that Dailey was entitled to UIM coverage under the Travelers policy. Accordingly, the single assignment of error is overruled and the judgment of the trial court is affirmed.
FAIN, P.J., and WOLFF, J., concur.