CINCINNATI INSURANCE CO. et al., Appellants,

v.

GETTER, Admr., et al., Appellees.

[Cite as *Cincinnati Ins. Co. v. Getter*, 194 Ohio App.3d 788, 2011-Ohio-3344.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2010–10–297.

Decided July 5, 2011.

John K. Benintendi, for appellant.

Freund, Freeze & Arnold and Patrick J. Janis, for appellees.

---

POWELL, Presiding Judge.

{¶ 1} Plaintiff-appellant, Cincinnati Insurance Company, appeals from the Butler County Common Pleas Court's decision granting summary judgment in favor of defendants-appellees, Robert Getter, Administrator of the Estate of Joyce Getter, deceased, and Auto Owners Insurance Company, on Cincinnati Insurance's subrogation action.[1]  We affirm.

{¶ 2} Robert Getter and Joyce Getter leased an independent-living facility from Ohio Presbyterian Retirement Services ("OPRS"), which is run by Midwest Presbyterian Senior Services ("MPSS").  MPSS owned the premises that OPRS leased to the Getters and insured the premises through Cincinnati Insurance.  In 2008, a fire broke out at the premises leased by the Getters, causing $169,719.75 in damages.  Cincinnati Insurance reimbursed MPSS for the damages to the leased premises minus the $10,000 deductible.

{¶ 3} Cincinnati Insurance then brought an action in the Butler County Common Pleas Court against Robert Getter as the administrator of Joyce Getter's estate and the Getters' insurer, Auto Owners, alleging that the fire was caused by Joyce Getter's negligence and therefore Cincinnati Insurance was entitled to subrogation against her estate for the amount it had been obligated to

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.

pay MPSS. Cincinnati Insurance also requested that Auto Owners be declared liable for the damages caused by Joyce Getter's negligence.

{¶ 4} Robert Getter and Auto Owners moved for summary judgment on Cincinnati Insurance's complaint, arguing that under *United States Fire Ins. Co. v. Phil–Mar Corp.* (1956), 166 Ohio St. 85, 1 O.O.2d 212, 139 N.E.2d 330, and cases following it, such as *Buckeye Union Ins. Co. v. Consolidated Stores Corp.* (1990), 68 Ohio App.3d 19, 587 N.E.2d 391, the terms of the Getters' lease with OPRS relieved Joyce Getter from common-law liability for her alleged negligence. The trial court agreed and granted summary judgment to Robert Getter and Auto Owners on Cincinnati Insurance's subrogation action.

{¶ 5} Cincinnati Insurance now appeals, raising the following as its sole assignment of error:

{¶ 6} The trial court erred to the prejudice of plaintiff-appellant in granting defendants-appellees' motion for summary judgment.

{¶ 7} Cincinnati Insurance argues that the trial court erred in finding that the lease agreement between OPRS and the Getters relieved Joyce Getter from liability for her negligence in causing the fire that damaged the leased premises owned by MPSS, because the lease agreement contained neither a "surrender clause" stating that a lessee will not be held responsible at the lease's termination for certain kinds of damage, nor a provision making it clear that the lessor's insurance on the leased premises is intended to protect both the lessor and the lessee. Therefore, Cincinnati Insurance contends, the rule in *Phil–Mar* and its progeny does not apply to the Getters' lease agreement and thus the lease agreement is subject to this state's "general rules for contracts relieving a party from the consequences of their negligence," which include the principle that such contracts are enforceable only if they are "clear and unequivocal." Cincinnati Insurance asserts that there is no provision in the lease agreement that "clearly and unequivocally" released Joyce Getter from the consequences of her negligence. We find these arguments unpersuasive.

{¶ 8} A trial court's decision to grant summary judgment is reviewed de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Summary judgment may be granted when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in its favor. *Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 192 Ohio App.3d 29, 2011-Ohio-160, 947 N.E.2d 1261, ¶ 11.

{¶ 9} Because Cincinnati Insurance brings this action as the subrogee of its insured, MPSS, Cincinnati Insurance can claim no rights greater than those

MPSS has against the Getters. *Cincinnati Ins. Co. v. Control Serv. Technology, Inc.* (1996), 111 Ohio App.3d 801, 803, 677 N.E.2d 388. Therefore, if there is no genuine issue of material fact regarding the trial court's finding that the lease agreement between the Getters and OPRS relieved Joyce Getter from her common-law liability to MPSS for her alleged negligence in causing the fire that damaged MPSS's property, then Cincinnati Insurance has no claim against the Getters or their insurer, Auto Owners. Id. See also *Nationwide Mut. Fire Ins. Co. v. T & J Transp. & Warehouse* (Jan. 25, 1991), Lucas App. No. L–90–097, 1991 WL 7274, *2.

{¶ 10} The "residency agreement" or lease agreement between OPRS and the Getters states:

{¶ 11} "**D. YOUR RIGHTS AND OBLIGATIONS**

{¶ 12} " * * *

{¶ 13} "3. You shall have the sole responsibility of providing insurance coverage for loss, damage, or theft of your personal property that You maintain in the Community. Our liability shall be only for Our Own negligent acts or omissions, or those of Our employees within the scope of their jobs.

{¶ 14} " * * *

{¶ 15} "**E. ACCOMMODATIONS**

{¶ 16} " * * *

{¶ 17} "2. We will provide insurance on Your living unit (not Your personal possessions), building, grounds and equipment provided by Us. You are solely responsible for insuring Your personal possessions and furnishings.

{¶ 18} " * * *

{¶ 19} "**F. MANAGEMENT RIGHTS**

{¶ 20} " * * *

{¶ 21} "2. Any modifications or permanent additions requested by You to Your unit (interior or exterior) must be agreed to by both You and OPRS, and will be at Your expense. You will be charged the costs of returning the unit to its original condition when You permanently vacate the unit."

{¶ 22} It has long been held in this state that a contract of indemnity purporting to relieve a party from the consequences of its negligence must be strictly construed and that the intention of the parties to provide such indemnification must be expressed in clear and unequivocal terms. See, e.g., *Kay v. Pennsylvania RR. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417, 103 N.E.2d 751, paragraphs one and two of the syllabus, and *George H. Dingledy Lumber Co. v. Erie RR. Co.* (1921), 102 Ohio St. 236, 131 N.E. 723, paragraph one of the

syllabus. However, in *Phil–Mar*, 166 Ohio St. 85, 87–89, 1 O.O.2d 212, 139 N.E.2d 330, the court found that certain provisions in the parties' lease agreement relieved the lessee of its common-law liability for negligence in causing a fire that damaged the lessor's property, even though there was no specific exculpatory clause in the lease that so relieved the lessee.

{¶ 23} In *Phil–Mar*, the court looked at the words expressed in the totality of the agreement to ascertain the intent of the parties. The court found that where a lease agreement contained (1) a surrender clause requiring the lessee to return possession of the leased premises to the lessor upon the expiration or termination of the lease, with said premises being " 'in as good condition and repair as the same shall be at the commencement of said term (loss by fire * * * excepted),' " and (2) a provision requiring the lessee to pay the lessor any additional premium charged for the fire insurance on the premises that resulted from the lessee's occupancy, the lessor had relieved the lessee of liability for fire caused by the lessee's negligence, and thus the lessor had no right of recovery against the lessee. Id. at syllabus. Continuing, the court found that the lessor's insurers, being subrogated only to the lessor's rights, also had no right of recovery against the lessee, even though the insurers had compensated the lessor for the losses it sustained as a result of the lessees' negligence. Id.

{¶ 24} In support of its decision, the *Phil–Mar* court focused on the language in the lease agreement's surrender clause, which, more fully stated, required the lessee to surrender possession of the leased premises " 'in as good condition and repair as the same shall be at the commencement of [the lease's] term (*loss by fire and ordinary wear and decay only excepted*).' " (Emphasis sic.) Id., 166 Ohio St. at 86–87, 1 O.O.2d 212, 139 N.E.2d 330. The court noted that while the parties had qualified the phrase "wear and decay" in the surrender clause with the word "ordinary," they did not qualify in any way the phrase "loss by fire," and thus the phrase "loss by fire" was to be given its usual and ordinary meaning, i.e., "damage resulting from fire caused by act of God, accident or negligence." Id. at 88. As a result, the court concluded that the parties "apparently intended to relieve the lessee from liability for any fire loss," including loss from fire caused by the lessee's negligence. Id.

{¶ 25} The court also cited another provision in the lease that "clearly indicated" the purpose of the surrender clause was to relieve the lessee from liability for loss by fire, namely, the provision requiring the lessee to pay the lessor for any additional premium charged for the fire insurance on the premises that resulted from the lessee's occupancy of the premises. Id. at 88–89. The court, after "considering the lease as a whole," found that it was apparent under

the circumstances of the case that "the parties intended to relieve the lessee from its common-law liability to the lessor for loss by fire." Id. at 89.

{¶ 26} *Phil–Mar* was subsequently followed by the Tenth District Court of Appeals in *Consolidated*, 68 Ohio App.3d 19, 587 N.E.2d 391. In that case, a lessor's premises were damaged when its lessee's employee negligently operated a forklift, causing the roof of the leased premises to collapse. Id. at 21. The lessor's insurer paid the lessor nearly $49,000 in damages for the collapsed roof and then brought a subrogation and negligence action against the lessee in common pleas court. Id. The lessee moved for summary judgment against the lessor, and the trial court granted it. Id. at 22. The court of appeals affirmed the trial court's decision granting summary judgment in favor of the lessee, finding that the "other casualty" exception in the "repairs/surrender" clause in the parties' lease agreement relieved the lessee from its common-law liability for negligence. Id. at 23–25.

{¶ 27} The "repairs/surrender" clause provided that the lessee " 'shall, at its own sole cost and expense, make all repairs it deems necessary to the interior of the demised premises, including all windows, and at the end of [the lease's] term or any extension thereof, shall surrender the demised premises to [lessor] in substantially the same condition as when received, *ordinary wear and tear and loss or damage by fire, Acts of God, or other casualty excepted.*' " (Emphasis sic.) Id. at 23. The lease agreement also contained an "insurance" clause requiring (1) the " '*[lessor] at its sole expense [to] keep the demised premises insured against loss by fire or other casualty customarily covered by a fire and extended coverage policy to the full replacement cost thereof*' " and (2) the lessee " 'to carry comprehensive public liability insurance naming [lessor] as an additional named insured' " "to insure for liability to persons or nonstructure-related property." (Emphasis sic.) Id. at 24.

{¶ 28} The *Consolidated* court, citing *Phil–Mar* for support, found that the commonly accepted definition of the term "other casualty" is "an accident or event that results from an unusual or unexpected cause," and that within the context of the lease agreement, culled from "reading the surrender and insurance clauses together," the term meant "*any* damage caused in *any* manner, including negligence, other than by [the lessee's] own intentional or criminal acts." (Emphasis sic.) Id., 68 Ohio App.3d at 25, 587 N.E.2d 391. The court then found that since the lease agreement "did not specifically assess to either party the loss occasioned from an 'other casualty,' * * * [the loss] was to be borne by the party, under the insurance clause, which was required to obtain insurance coverage against such damage, to wit: the lessor, * * * (and therefore its subrogee * * *)." Id. The court further noted that the "real issue" in the case was

"whether the [*Phil–Mar*] doctrine should be extended to other nonfire-related incidents as an exception to the general principle of requiring some express exclusion of negligence," and it found that it was appropriate to do so, even though the damages in that case were caused by a collision while the damages in *Phil–Mar* were caused by a fire. Id.

{¶ 29} In *Control Serv. Technology, Inc.,* 111 Ohio App.3d 801, 677 N.E.2d 388, the Second District Court of Appeals reversed a trial court's decision granting summary judgment against the lessor's insurer and in favor of the lessee, Control Service Technology ("CST"), on the insurer's subrogation and negligence action. The trial court had granted summary judgment to CST on the basis of a provision in the parties' lease in which the lessor agreed to restore the leased premises under certain conditions in the event of a fire or other casualty. The trial court found that this lease provision constituted "a waiver of any negligence on the part of CST." Id. at 803.

{¶ 30} The court of appeals disagreed, finding that the provision in question was ambiguous and "[did] not appear to be a waiver of negligence on the part of the lessee, or at least it is not the type of waiver ordinarily relied upon to excuse a party from the results of the party's own negligence." Id. at 805, citing *Kay,* 156 Ohio St. 503, 46 O.O. 417, 103 N.E.2d 751, paragraphs one and two of the syllabus. The court of appeals also found that the parties' lease did not contain a surrender clause similar to the "rather explicit" surrender clauses in *Phil–Mar* and *Consolidated. Control Serv. Technology* at 804. The court of appeals further noted that "unlike the leases in *Phil–Mar* and *Consolidated,* the present lease *did not require that the lessor carry fire insurance,* nor did it specify that the lessor would be reimbursed for additional fire insurance premiums attributable to the lessee's occupancy." (Emphasis added.) Id. at 807.

{¶ 31} While *Phil–Mar* and *Consolidated* are distinguishable from this case in that the lease agreement between OPRS and the Getters does not contain a surrender clause similar to the clauses in those cases or a provision requiring the Getters to share part of the costs of the fire insurance with the lessor, this case is similar to those cases in that, unlike the lease agreement in *Control Serv. Technology, Inc.,* the lease agreement between the Getters and OPRS required OPRS to provide insurance on the Getters' "living unit * * *, building, grounds and equipment provided by [OPRS.]" Under section E.2 of the parties' lease agreement, OPRS was obligated to "provide insurance on [the Getters'] living unit (not [the Getter's] personal possessions), building, grounds and equipment provided by [OPRS,]" and in the next sentence, the Getters are made "solely responsible for insuring [their] personal possessions and furnishings." Any reasonable lessee in the Getters' position would have interpreted this provision in

their lease agreement as meaning that OPRS was assuming responsibility for providing insurance on the building of the leased premises for risks such as accidental fires, while the lessee would be responsible for obtaining insurance coverage for his or her personal possessions and furnishings.

{¶ 32} Furthermore, we disagree with Cincinnati Insurance's assertion that the language in the surrender clause contained in Section F.2 of the lease agreement stating "You will be charged the costs of returning the unit to its original condition when you permanently vacate the unit" demonstrates that the parties did not intend to relieve the Getters from common-law liability for their negligent acts. The sentence that immediately precedes the surrender clause states, "Any modifications or permanent additions requested by You to Your unit (interior or exterior) must be agreed to by both You and OPRS, and will be at Your expense." When this sentence and the surrender clause are read together, the average lessee would have interpreted the surrender clause to mean that upon leaving the premises, the lessee would be responsible for undoing any modifications or "permanent additions" that he or she installed, and returning the property to its original condition. Moreover, for the reasons stated earlier, a reasonable lessee in the Getters' position would have believed that under the lease agreement, it was OPRS's responsibility as the lessor to provide fire insurance for the building, and nothing in the surrender clause or the sentence immediately preceding it would have altered that belief.

{¶ 33} Cincinnati Insurance also argues the language in Section D.3 of the lease agreement stating "[OPRS's] liability shall be only for [OPRS's] Own negligent acts or omissions, or those of [OPRS's] employees within the scope of their jobs" proves that the parties did not intend for the Getters to be released from liability for their negligent acts. However, this language. also must be read in context with the sentence that immediately precedes it, which states, "You shall have the sole responsibility of providing insurance coverage for loss, damage, or theft of your personal property that You maintain in the Community." When these sentences are read together as they must be, see, e.g., *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16 (a contract must be read as a whole, with the intent of each part gathered from a consideration of the whole), it is apparent that OPRS was merely acknowledging in this section of the lease agreement that while lessees are responsible under the lease agreement for insuring their own personal property and furnishings, instances may arise in which OPRS or one of its employees during the scope of their employment may negligently damage a lessee's personal property and furnishings, and in such instances, OPRS would be responsible for such damages.

{¶ 34} The trial court stated in its decision that it was not "persuaded by [Cincinnati Insurance's] contention that the [lease agreement] does not *clearly*

*and unequivocally* release [Joyce Getter] from liability." (Emphasis added.) The trial court then cited the provisions of the lease agreement discussed above to refute Cincinnati Insurance's contention. The trial court's response to Cincinnati Insurance's argument makes it appear that the trial court may have believed that it was required to employ the "clear and unequivocal" standard in determining whether the lease agreement in this case relieved Joyce Getter from her common-law liability for her alleged negligence. However, the majority in *Phil–Mar* did not use the term "clear and unequivocal" in their decision. The term is mentioned briefly in *Control Serv. Technology, Inc.,* 111 Ohio App.3d at 805, 677 N.E.2d 388, in a parenthetical explanation accompanying that court's citation to *Kay,* 156 Ohio St. 503, 46 O.O. 417, 103 N.E.2d 751. However, as the *Consolidated* court stated, the decision in *Phil–Mar* constitutes "an exception to the general principle of requiring some express exclusion of negligence." *Consolidated,* 68 Ohio App.3d at 25, 587 N.E.2d 391.

{¶ 35} Cincinnati Insurance has also recognized this fact in its appellate brief, and thus has framed its argument on appeal by first contending that the rule in *Phil–Mar* and its progeny does not apply in this case and then asserting that the Getters' lease agreement is therefore subject to the "general rules for contracts relieving a party from the consequences of their negligence," including the principle that such contracts are enforceable only if they are "clear and unequivocal." However, we have found that the lease agreement in this case does fall under the rule set forth in *Phil–Mar* and its progeny, even though the lease agreement between the Getters and OPRS differs from the one in those cases. Additionally, while the *Phil–Mar* court may not have used the term "clear and unequivocal," the court's decision stands for the proposition that it must be clear and apparent from the terms of the lease agreement, looked at as a whole, that the parties intended to relieve the lessee from its common-law liability to the lessor for negligence. Id., 166 Ohio St. at 88–89, 1 O.O.2d 212, 139 N.E.2d 330.

{¶ 36} When the Getters' lease agreement is considered as a whole, taking into account all of the agreement's terms and the circumstances of this case, we conclude that it is clear and apparent that the parties intended to relieve Joyce Getter from her common-law liability to the lessor for negligently causing a fire that damages MPSS's property. See *Phil–Mar* at 89 and *Consolidated,* 68 Ohio App.3d at 23–25, 587 N.E.2d 391.

{¶ 37} The dissent appears critical of the "great lengths" to which we have gone to construe the agreement as a whole in order to determine the clear intent of the parties. However, such task is often our responsibility in determining if a material question of fact truly exists. Here, it does not.

{¶ 38} Courts in this country have developed three approaches to dealing with the question whether a lessor's insurer can bring a subrogation claim against a

lessee who negligently causes a fire that damages the lessor's property, for which the insurer is obligated to reimburse the lessor. *Am. Family Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 757 N.W.2d 584, 589, 2008-SD-106, ¶ 12–34. The first approach is the rule established in *Sutton v. Jondahl*, 532 P.2d 478, 1975 OK.Civ.App. 2, commonly referred to as the "*Sutton* rule," which holds that a lessor's insurer is *not* entitled to seek subrogation against a lessee even when the lessee's negligence has caused a fire that damages the lessor's property, because the lessor and lessee are deemed to be "implied co-insureds" under the landlord's fire-insurance policy. *Am. Family Mut. Ins. Co. v. Auto–Owners Ins. Co.* at ¶ 15. The second approach, commonly referred to as the "Anti-*Sutton* approach," holds that a lessor's insurer *is* permitted to bring a subrogation claim against a lessee for the lessee's negligence, absent an express or implied agreement precluding such a claim. Id. at ¶ 21. The third approach, commonly referred to as the "case-by-case approach," requires the court to examine the lease as a whole in order to determine the parties' intent regarding the question of whom should bear the risk of loss for damage to the leased premises caused by the lessee's negligence. Id. at ¶ 27.

{¶ 39} By virtue of the Ohio Supreme Court's decision in *Phil–Mar*, 166 Ohio St. 85, 1 O.O.2d 212, 139 N.E.2d 330, Ohio has been viewed as a state that uses the case-by-case approach. See, e.g., *Dattel Family Ltd. Partnership v. Wintz* (Tenn.Ct.App.2007), 250 S.W.3d 883, 888. Courts that employ the case-by-case approach have found that "if the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, absent some compelling provision to the contrary, the court can conclude that it was reasonably expected that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss." *Am. Family Mut. Ins. Co.* at ¶ 29. Conversely, courts that employ the case-by-case approach have found that "subrogation may be appropriate where the lease does not require the landlord to purchase fire insurance or the lease requires the tenants to purchase their own insurance to cover liabilities resulting from their negligence." Id. at ¶ 30.

{¶ 40} In this case, the parties' lease agreement expressly states that OPRS "will provide insurance on [the Getters'] living unit (not [the Getters'] personal possessions), building, grounds and equipment provided by [OPRS,]" and in the next sentence, makes the Getters "solely responsible for insuring [their] personal possessions and furnishings." As we have previously stated, any reasonable lessee in the Getters' position would have interpreted the parties' lease agreement to mean that OPRS was assuming responsibility for providing insurance on the building for risks such as accidental fires, while the lessee would be responsible for obtaining insurance coverage for his or her personal possessions and furnishings.

{¶ 41} In light of the foregoing, the trial court properly granted summary judgment to the Getters and Auto Owners on Cincinnati Insurance's complaint, because the terms of the parties' lease agreement relieved Joyce Getter from common-law liability for her alleged negligence in causing the fire that resulted in damage to the leased premises. See *Phil–Mar,* 166 Ohio St. at 89, 1 O.O.2d 212, 139 N.E.2d 330, and *Consolidated,* 68 Ohio App.3d at 23–25, 587 N.E.2d 391. Cf. *Control Serv. Technology, Inc.,* 111 Ohio App.3d at 807, 677 N.E.2d 388. As a result, MPSS could not have brought a negligence action against Joyce Getter's estate, and therefore Cincinnati Insurance, as MPSS's subrogee, could not bring a subrogation action against Joyce Getter's estate, either. Id. at 803.

{¶ 42} Accordingly, Cincinnati Insurance's sole assignment of error is overruled.

Judgment affirmed.

HUTZEL, J., concurs.

RINGLAND, J., dissents.

RINGLAND, Judge, dissenting.

{¶ 43} I respectfully dissent from the majority's decision for a question of fact remains as to whether the parties intended to relieve the Getters from their common-law liability.

{¶ 44} As can be seen, the majority, although finding that the parties' intent must be "clear and apparent," goes to great lengths in order to construe the agreement as establishing the parties' intent to relieve the Getters from their common-law liability. However, regardless of whether the parties' intent must be "clear and unequivocal," or simply "clear" and "apparent," terms which I find virtually synonymous, nothing in the majority's decision, nor anything in the lease agreement itself, indicates that the parties intended to relieve the Getters from liability as a matter of law. Therefore, because the parties' intent cannot be established as a matter of law, a question of fact remains as to whether the parties intended to relieve the Getters from their common-law liability in the case at bar. Accordingly, I respectfully dissent from the majority's decision and would find that the trial court erred in granting summary judgment to Getter and Auto Owners.